IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN ARTHURS,

      Petitioner,

    v.                           Case No. 2:11-cv-541

                                     JUDGE ALGENON L. MARBLEY
WARDEN, WARREN CORRECTIONAL     Magistrate Judge Kemp
INSTITUTION,

      Respondent.

## REPORT AND RECOMMENDATION

    Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on that petition, respondent's return of writ, the exhibits attached to the return, and petitioner's reply. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's claims be **DISMISSED**.

## I. PROCEDURAL HISTORY

    On December 12, 2007, a Franklin County, Ohio grand jury indicted petitioner and a co-defendant, John Lee Gibson, on five felony counts arising out of two aggravated robberies and the killing of one Terry Salmons during the course of a robbery. The offenses allegedly occurred on December 2, 2007. The indictment contained two counts of aggravated robbery with firearm specifications, one count of aggravated murder, one count of murder, and one count of having a weapon under a disability. The murder counts also were accompanied by specifications relating both to

the use of a firearm and to petitioner's status as a repeat offender. *Return of Writ,*
Exhibit One.

Petitioner pleaded not guilty and the case went to trial. Petitioner waived his
right to trial by jury on the weapon under a disability count, and the remaining counts
were tried to a jury. On March 12, 2009, the jury convicted him of two counts of
aggravated robbery and one count of murder, but acquitted him of aggravated murder.
The trial judge separately found him guilty of having a weapon under a disability. On
March 13, 2009 the trial judge sentenced him to thirteen years of imprisonment on each
of the aggravated robbery counts (ten years plus three consecutive years for the firearm
specification), fifteen years to life on the murder charge plus three years of consecutive
prison time for its firearm specification and eight years of consecutive prison time for its
repeat offender specification, and five years on the weapons count. The first two
sentences were run concurrently to each other but consecutively to the sentence on the
murder charge. *Return of Writ*, Exhibit Five. The sentences totaled forty-one years to
life.

Petitioner timely appealed his conviction to the Court of Appeals for the Tenth
Appellate District. He raised ten assignments of error:

ASSIGNMENT OF ERROR # 1

APPELLANT'S INDICTMENT WAS DEFECTIVE UNDER ARTICLE I,
SECTION 10 OF THE OHIO CONSTITUTION AS THE STATE FAILED
TO INCLUDE A MENTAL CULPABILITY ELEMENT FOR EITHER
AGGRAVATED ROBBERY OR MURDER IN THE INDICTMENT.

2

ASSIGNMENT OF ERROR # 2

THE TRIAL COURT ERRED WHEN IT OMITTED ACCOMPLICE
INSTRUCTIONS FROM THE JURY CHARGE, THEREBY VIOLATING
THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE
U.S. CONSTITUTION, AND ARTICLE I, SECTIONS 1 & 16 OF THE
OHIO CONSTITUTION.

ASSIGNMENT OF ERROR # 3

APPELLANT'S CONVICTION FOR MURDER UNDER R.C. § 2903.02(B)
VIOLATED HIS RIGHTS TO DUE PROCESS AND EQUAL
PROTECTION AS GUARANTEED BY ARTICLE 1, SECTIONS 2 & 10 OF
THE OHIO CONSTITUTION, AND THE 14TH AMENDMENT TO THE
U.S. CONSTITUTION.

ASSIGNMENT OF ERROR # 4

THE TRIAL COURT ERRED IN ENTERING A GUILTY VERDICT ON
THE CHARGE OF FELONY MURDER AS R.C. § 2903.02(B) EXPRESSLY
PROVIDES THAT THE STATUTE IS INAPPLICABLE WHEN THE
APPELLANT CAN BE CHARGED WITH INVOLUNTARY
MANSLAUGHTER.

ASSIGNMENT OF ERROR # 5

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO
DECLARE A MISTRIAL, IN VIOLATION OF APPELLANT'S RIGHTS TO
REMAIN SILENT AND DUE PROCESS UNDER THE 5TH AND 14TH
AMENDMENTS TO THE U.S. CONSTITUTION, AND ARTICLE I,
SECTIONS 10 & 16 OF THE OHIO CONSTITUTION.

ASSIGNMENT OF ERROR # 6

THE TRIAL COURT ERRED WHEN IT FOUND THAT THE
APPELLANT'S SON WAS COMPETENT TO TESTIFY IN VIOLATION
OF EVIDENCE RULE 601 AND THE DUE PROCESS CLAUSE OF THE
14TH AMENDMENT AND ARTICLE I, SECTION 16 OF THE OHIO
CONSTITUTION.

ASSIGNMENT OF ERROR # 7

APPELLANT'S CONVICTIONS WERE BOTH AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WERE NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION, AND ARTICLE 1, SECTIONS 1 & 16 OF THE OHIO CONSTITUTION.

ASSIGNMENT OF ERROR # 8

THE COMBINED EFFECT OF MULTIPLE TRIAL COURT ERRORS VIOLATED APPELLANT'S DUE PROCESS RIGHTS UNDER THE 14TH AMENDMENT TO THE U.S. CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

ASSIGNMENT OF ERROR # 9

THE TRIAL COURT ERRED WHEN IT FAILED TO ADVISE THE APPELLANT AT SENTENCING THAT HE WOULD BE SUBJECT TO MANDATORY POST-RELEASE CONTROL UPON HIS RELEASE FROM PRISON IN VIOLATION OF R.C. § 2967.28, THEREBY RENDERING APPELLANT'S SENTENCE VOID.

ASSIGNMENT OF ERROR # 10

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE 6TH AMENDMENT TO THE U.S. CONSTITUTION, AND ARTICLE I, SECTIONS 10 & 16 OF THE OHIO CONSTITUTION.
.

*Return of Writ*, Exhibit Seven.

In a decision dated February 23, 2010, the Tenth District Court of Appeals affirmed petitioner's conviction and sentence. *State v. Arthurs*, 2010 WL 628822 (Franklin Co. App. February 23, 2010). The Ohio Supreme Court subsequently denied review. *State v. Arthurs*, 125 Ohio St.3d 1464 (June 23, 2010).

On June 20, 2011, petitioner timely filed his petition for a writ of habeas corpus in

this Court. In his petition, he has raised the same issues which were raised on appeal in the state courts, stating that "[t]he grounds raised in Petitioner (sic) direct appeal are the same grounds raised in this petition for a writ of habeas corpus." (*Petition*, at 2). However, they are phrased slightly differently; petitioner appears to have deleted any reference to state law grounds for relief, and has added some language indicating the federal constitutional basis for each claim to the extent that such a basis was not made explicit in his state court assignments of error. The Court will highlight any significant differences in its individual discussion of these claims.

It is respondent's position that the first claim for relief, to the extent that it attempts to raise a federal constitutional claim, was procedurally defaulted, and that the same is true for petitioner's second claim for relief. Respondent contends that the remainder of petitioner's claims lack merit.

## II. FACTS

The pertinent facts are stated in the state court of appeals' opinion as follows. These facts are presumed to be correct. *See* 28 U.S.C. §2254(e)(1)*; see also House v. Bell*, 283 F.3d 37 (6th Cir.2002).

> {¶ 3} In early December 2007, Terry Salmons ("Turtle") and Rick Leitwein ("Josh") were selling drugs from a residence in the southern part of Columbus, Ohio. John Arthurs ("Arthurs") and John Lee Gibson ("Gibson") decided to rob the men at the residence to get drugs and money. During the course of the robbery, Turtle was shot in the back. He died as a result of the wound he received.

> {¶ 4} Arthurs and Gibson both had firearms with them. Gibson denied shooting Turtle, and testified for the State of Ohio after reaching a plea agreement, which

guaranteed him only a ten-year term of incarceration for his involvement in the homicide and robbery. Gibson testified that Arthurs followed Turtle into the dining room of the house, following which Gibson heard a gunshot. Marijuana was stolen from the residence.

{¶ 5} Other testimony at trial established that Arthurs had previously been convicted of burglary, a felony of the second degree, which resulted in his legal disability from owning a firearm. The same conviction qualified Arthurs for a finding of guilty on a repeat violent offender specification under R.C. 2929.01.

{¶ 6} The testimony at trial provided sufficient proof that Arthurs, after announcing that he and Gibson were there to rob Turtle and Josh, followed Turtle into an adjoining room, and shot him in the back. Turtle died from the wound. Arthurs and Gibson stole marijuana as part of the robbery.

*State v. Arthurs*, 2010 WL 628822, at *2.

### III. PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.

*Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982);

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state

argues that a federal habeas claim is precluded by the petitioner's failure to observe a

state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court

must determine that there is a state procedural rule that is applicable to the petitioner's

claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must

determine whether the state courts actually enforced the state procedural sanction. *Id.*

Third, it must be decided whether the state procedural forfeiture is an adequate and

independent state ground on which the state can rely to foreclose review of a federal

constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule

was not complied with and that the rule was an adequate and independent state

ground, then the petitioner is required to demonstrate that there was cause for him not

to follow the procedural rule and that he was actually prejudiced by the alleged

constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to

raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94

(6th Cir.1985).

Petitioner's first claim, as phrased in his habeas corpus petition, is that the failure

of the indictment to include a *mens rea* element violates the Sixth Amendment to the

United States Constitution.  His assignment of error on this point in the state court of

appeals referred only to Article I, Section 10 of the Ohio Constitution, although he

7

added the reference to the United States Constitution when he petitioned the Ohio Supreme Court for review. Respondent contends that any potential federal constitutional claim was waived because petitioner's trial counsel never objected to the way in which the indictment was worded, and the state court of appeals reviewed the issue only for plain error. It should be noted that this claim pertains only to the counts of the indictment charging petitioner with murder and with aggravated robbery, and does not apply to the weapons charge.

The state court of appeals disposed of this claim by noting that the Ohio Supreme Court, in a now-overruled decision, *State v. Colon*, 118 Ohio St. 3d 26 (2008)(*Colon I*), had held that the failure of an indictment to include a *mens rea* element - even if the indictment tracked the language of the statute defining the crime - constituted reversible error. *Colon I* also held that because the error was structural in nature, the defendant did not need to object to the defective indictment at the time of trial in order to preserve the issue for appeal. The Ohio Supreme Court quickly issued another decision in the same case, upon the State's motion for reconsideration, and held that such a defect in the indictment would not be deemed "structural" and require reversal absent a showing of prejudice if the defect did not result in other, related errors in the trial proceedings, such as the failure to instruct the jury about the *mens rea* needed for conviction. The Supreme Court suggested that in cases where no structural error was present, the issue would ordinarily be reviewed under a "plain error" standard. *State v. Colon*, 119 Ohio St. 3d 204 (2008)(*Colon II*). This was the state of Ohio law when

8

petitioner's case was tried and when his appeal was decided; on August 27, 2010, after the court of appeals made its decision, the Ohio Supreme Court overruled *Colon* in *State v. Horner,* 126 Ohio St.3d 466 (2010), including that portion of *Colon* which held that the failure to object to the indictment at trial did not constitute a waiver of any structural defect in the indictment.

Given this state of the law, it is not at all clear that Ohio law required counsel to object at trial to the allegedly defective nature of the indictment, at least in order to preserve any claim of structural error. It is also not clear, despite respondent's argument to the contrary, that the state court of appeals considered the claim to have been waived or defaulted due to counsel's failure to object at trial. In a relatively brief discussion of the issue, the court concluded that because the same type of "related" errors identified in *Colon I* were not present in petitioner's case, he was not entitled to relief: "We have consistently found that the rationale of *Colon I* does not apply to situations where no defect in the indictment is alleged in the trial court such that the indictment can be easily amended. Especially in situations where the defendant and his or her counsel are on complete notice of the charges before and during trial as a result of the indictment listing the applicable statute by number, we will not find reversible error." *State v. Arthurs*, 2010 WL 628822, at *4. This has some of the earmarks of a merits determination.

However, it is not essential for this Court to decide if a procedural default of this claim occurred. Putting aside for the moment that any federal constitutional aspect of

9

the claim appears not to have been raised in petitioner's first appeal, and that the Ohio Supreme Court will not ordinarily consider issues not raised before the intermediate appellate courts, *see State ex rel. Ohio Civ. Serv. Employees Assn., AFSCME, Local 11, AFL-CIO*, 104 Ohio St.3d 122, 129 (2004), the alleged defect in the indictment does not rise to the level of federal constitutional error.

The Fifth Amendment to the Constitution provides, in part, that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ...."  The Sixth Amendment assures a criminal defendant that he or she has the right "to be informed of the nature and cause of the accusation ...."  The right not to be tried on a felony charge absent an indictment returned by a Grand Jury does not apply to the States.  *Alexander v. Louisiana*, 405 U.S. 625 (1972); however, a State still must comply with the requirement that a defendant be given fair notice of the charges.  *Cole v. Arkansas*, 333 U.S. 196 (1948).  It appears that petitioner is not arguing that the defect he alleges in his indictment violated the Fifth Amendment, but that it did not, in contravention to the Sixth Amendment, give him fair notice of the charges he was facing.  To the extent that this is the claim he raised on appeal in the state court, that court found that he clearly had notice of the charge.  The question here is whether that was an objectively unreasonable determination.

The Court begins with the applicable standard under which claims for habeas corpus relief are judged.  The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's

review.  *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001);

*Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008).  AEDPA imposes a "highly deferential

standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117

S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the

benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279

(2002) (per curiam ).  *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)(footnote omitted) .

When the claims presented in a habeas corpus petition have been presented to

and decided by the state courts, a federal habeas court may not grant relief unless the

state court's decision was contrary to or an unreasonable application of clearly

established federal law, or based on an unreasonable determination of the facts in light

of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on

whether the state court's application of clearly established federal law is objectively

unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v.*

*Cone*, 535 U.S. 685, 694 (2002). To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, – S.Ct. –, 2011 WL 5299458, at *1 (Nov. 7, 2011), *quoting Harrington v. Richter,* 562 U.S. ----, ----, 131 S.Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786 (*quoting Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

This Court cannot conclude that the denial of relief on this claim represented an unreasonable result under applicable federal law.  As the court explained in  *Moviel v. Smith*, 2010 WL 148141, at * 13 (N.D. Ohio Jan.12, 2010)::

> Procedural due process requires that the indictment: "(1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy." *Joseph v. Coyle*, 469 F.3d at 463 (quoting *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir.2005)); and *see Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.C. 514, 92 L.Ed. 644 (1948). The law is clear that "[b]eyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir.2002) (citing *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir.1986)). The Constitution only requires that whatever charging method a state employs, the state must give a defendant fair notice of the charges to permit adequate preparation of his defense, so

12

> "that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir.1988); *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir .1984); *Combs v. Tennessee*, 438 F.2d 695, 698 (6th Cir.1976) cert. denied, 425 U.S. 954 (1976); *In re Ruffalo*, 390 U.S. 544, 88 S.C. 1222, 20 L.Ed.2d 117 (1968).

Here, the indictment specifically identified the type of crime petitioner allegedly committed (either murder or aggravated robbery), the date of the crime, and the names of the alleged victims. That information was sufficient to allow him to prepare a defense, and he does not argue otherwise. The fact that the indictment did not specify a *mens rea* requirement - just as the underlying Ohio statutes do not - does not mean that petitioner was unaware that the state had to prove *mens rea*, or unaware what *mens rea* applied to these crimes. Thus, the constitutional requirements of fair notice were satisfied. *See Jordan v. Sheets*, 2012 WL 553091 (S.D. Ohio Feb. 21, 2012)("The charges of aggravated burglary and aggravated robbery in Petitioner's indictment contain all the essential elements of the offenses. The indictment also sets forth factual information regarding the time of the offense and the victims. The indictment provided Petitioner of fair notice of the charges against him and meets the requisite constitutional standard"); *see also Williams v. Haviland*, 467 F.3d 527, 535-36 (6th Cir. 2006)("Although the exact mens rea requirements were not stated in the indictment, the indictment precisely stated the offenses with which Williams was charged so that there could be no confusion on this point").

There is no other prejudice apparent on the record. For example, the jury

13

instructions given in petitioner's case advised the jurors that before they could convict petitioner of either aggravated robbery or murder, they had to find that petitioner acted purposefully with respect to his intent to deprive the victims of their property.  *See* Trial Transcript, at 601 (attached as an Exhibit to the Return of Writ).  Because the aggravated robberies were the predicate for the murder charge (it was a felony murder charge), that same *mens rea* instruction applied to the murder charge.  Petitioner did not object to these instructions.  Courts have held that, under similar circumstances, no constitutional error relating to fair notice of the charges has occurred.  *See, e.g., Alston v. Voorhies*, 2008 WL 8101945, *21 (N.D. Ohio July 24, 2008) ("Although the indictment did not charge the *mens rea* element of robbery, the jury instructions included a *mens rea*. Thus, the jury considered the defendant's *mens rea*  as an element of the offense"), *adopted and affirmed* 2010 WL 3895069 (N.D. Ohio Sept. 30, 2010).

As part of his argument, in his traverse, petitioner appears to claim that the defect in the indictment rendered it void, and that he may take advantage of the "actual innocence" standard set forth in *Kuhlmann v. Wilson*, 477 U.S. 436 (1986).  That argument is misplaced.  In addition to the fact that *Kuhlmann* deals only with the question of whether a showing of actual innocence could allow a federal court to consider the merits of an otherwise successive petition, as the Court of Appeals noted in *Williams v. Haviland, supra* at 535, "[a] constitutionally deficient indictment is subject to harmless-error review," a statement totally inconsistent with the notion that a defect in an indictment creates a jurisdictional problem for the state courts.  This Court has

14

consistently held that defects in an indictment such as the failure to allege a *mens rea* element (assuming that such failure renders the indictment defective) are not jurisdictional and do not make the indictment and all subsequent proceedings void. *See, e.g., Taylor v. Brunsman*, 2010 WL 2465373 (S.D. Ohio May 11, 2010), *adopted and affirmed* 2010 WL 2465372 (S.D. Ohio June 10, 2010).  Therefore, whether or not petitioner procedurally defaulted this first claim, it has no merit.

The other claim which respondent contends has been procedurally defaulted is claim two, in which petitioner asserts that the state trial judge erred by failing to give an "accomplice instruction" to the jury regarding Mr. Gibson's testimony at trial. Petitioner's counsel never requested that instruction (which, under Ohio Rev. Code §2923.03(D), Ohio trial judges must give if asked to), and respondent contends that this claim was procedurally defaulted for that reason.  It is clear that the state appellate court considered the claim to have been waived, and reviewed it only for plain error. *See State v. Arthurs, supra*, at *5 ("Where counsel fails to draw an error to the attention of the trial court, the appellate courts perform a 'plain error' analysis under Crim.R. 52(B)").  That court found no plain error, noting that given the amount and consistency of the testimony at trial, the failure to give the instruction did not result in a miscarriage of justice.  *Id.*

This claim, to the extent that it has a due process component which is cognizable in federal habeas corpus, was clearly defaulted.  Petitioner's tenth ground for relief is that his trial attorney was constitutionally ineffective for failing to ask for this

15

instruction.  Because ineffective assistance of counsel can excuse a procedural default, *see Murray v. Carrier*, 477 U.S. 478 (1986), the Court will complete its discussion of this claim when it considers petitioner's tenth ground for relief.

### IV.  THE MERITS

Respondent does not raise any specific issues of procedural default with respect to the remainder of petitioner's grounds for relief.  The Court must therefore consider them on the merits.  The standard of review applicable to each ground for relief is the deferential standard contained in the AEDPA, as more fully described above.

### A.  Grounds Three and Seven - Sufficiency of the Evidence

The return addresses grounds three, four, and seven together, because, according to respondent, in each of these grounds, petitioner attacks some portion of the evidence as insufficient to support a conviction.  The Court will  address claim seven first, because it generally challenges the sufficiency of the evidence to support all of the jury's verdicts.  The Court will also address ground three in this section because it raises sufficiency of the evidence claims.  Ground four will be discussed separately.

A challenge to the sufficiency of the evidence, when made in a habeas corpus petition subject to the AEDPA, must meet an exacting standard.  As this Court explained in *Lynch v. Hudson*, 2011 WL 4537890, *81-82 (S.D. Ohio September 28, 2011):

> In *Jackson  v. Virginia* [443 U.S. 307 (1979)], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the

evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief "if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.

It is important to remember when reviewing a sufficiency of the evidence challenge that this Court "do[es] not reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009). If the record contains credible, competent evidence enabling a rational jury to find each essential element beyond a reasonable doubt, then Petitioner's challenge to the sufficiency of the evidence fails. *Cf. Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir.2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").

\*Further, as the Sixth Circuit has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of [the *Jackson v. Virginia*] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir.2008). In *Tucker v. Palmer,* 541 F.3d 652 (6th Cir.2008), the Sixth Circuit explained in more detail:

> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by the AEDPA.

*Id*. at 656. *See also Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007); *Nash v. Eberlin,* 258 F. App'x 761, 765 (6th Cir.2007). This Court recognizes,

however, that "even after AEDPA, [the Court] must 'distinguish reasonable speculation from sufficient evidence' when reviewing a state court's application of *Jackson*." *Smith v. Romanowski*, No. 07–1578, 2009 WL 1884451, at *6 (6th Cir. Jul.1, 2009) (Moore, J., dissenting) (quoting *Brown v. Palmer*, 441 F.3d 367, 352 (6th Cir.2006)).

The state court of appeals addressed petitioner's seventh assignment of error first. In that assignment of error and in his seventh ground for relief here, petitioner raises a general challenge to the sufficiency of the evidence.  The state court concluded, in overruling that assignment of error, that "[a]ll the verdicts of guilty were appropriate, being supported by sufficient evidence and the manifest weight of the evidence."  *State v. Arthurs supra*, at *3.  The state court cited no authority and did not indicate what legal test it applied in reaching that conclusion.  However, its analysis focused on the presence of testimony that petitioner and Gibson announced, when they entered the residence where the shooting occurred, that they were there to commit robbery, that petitioner followed the shooting victim into another room, that gunshots were fired, that petitioner had a weapon with him, that the victim died, and that a robbery occurred.  That evidence, coupled with evidence about the weapons and petitioner's prior conviction for a crime of violence, was enough, in the state court's view, to support each conviction and each specification found by the jury.  That is the correct and constitutionally-prescribed method of analysis and the state court's conclusion is one that fair-minded jurists could have reached on this record.

In his traverse, petitioner appears to argue only that his conviction was against

the manifest weight of the evidence because all of the witnesses were admitted drug users and were friends of the victim.  A claim that a conviction is against the manifest weight of the evidence is a state law claim and a federal court cannot grant a petitioner relief on that ground.  *See Hess v. Eberlin*, 2006 WL 2090093, *8 (S.D. Ohio July 25, 2006). Further, in determining if the evidence is sufficient to support a conviction, matters such as the credibility of the witnesses are left to the jury to decide.  *See, e.g., Spence v. Sheets*, 675 F.Supp. 2d 792, 803 (S.D. Ohio 2009)("In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses"), *citing Jackson v. Virginia*, 443 U.S. at 319.  Therefore, petitioner's seventh ground for relief is without merit.

Ground three appears to differ from ground seven in that it specifically challenges the sufficiency of the evidence to support a finding that petitioner purposely murdered the victim or knowingly committed the underlying robberies.  This claim was phrased somewhat differently in the state courts; the state court of appeals construed it as a constitutional attack on Ohio's felony murder statute, premised on the claim that all murder convictions must be supported by a finding that the killing was purposeful, whereas the felony murder statute does not require that showing to be made.  To the extent that petitioner has now altered his claim, it overlaps entirely with claim seven except for the question of whether the evidence supported a finding that he purposefully killed the victim.  But if a purposeful killing is not a statutory or

19

constitutional prerequisite to being found guilty of felony murder, then the absence of evidence of a purposeful killing is irrelevant.

Ohio Rev. Code §2903.02, which encompasses the crime of murder, states, in subsection (A), that purposefully causing the death of another is a murder. However, subsection (B), under which petitioner was charged, alternatively defines murder as proximately causing the death of another as a result of the commission of an offense of violence that is a first or second degree felony. In a felony murder case, the State need not show a purpose to kill, but only the knowing commission of the underlying felony, and a proximate causal relationship between the commission of the underlying felony and the victim's death. *State v. Miller*, 96 Ohio St. 3d 384 (2002). Thus, even if petitioner is correct that the evidence would not support a finding that he purposely killed Mr. Salmons, it did not need to. The evidence was plainly sufficient to support both a finding that he knowingly committed aggravated robbery - his announced intention to do so is proof enough on that point - and that the killing occurred as a proximate or reasonably foreseeable result of the robbery when, in the course of robbing Mr. Salmons, petitioner shot him in the back. Thus, his third ground for relief is likewise without merit.

### B. Ground Four - Murder or Involuntary Manslaughter

In the state court of appeals, petitioner's fourth assignment of error asserted that the Ohio General Assembly, in enacting Rev. Code §2903.02(B) (the felony murder statute discussed above), meant to prohibit a defendant's being found guilty of felony

murder if the evidence also supported a conviction for involuntary manslaughter.  That appears to be purely an issue of the proper interpretation of state law, and not a claim that petitioner's federal constitutional rights were violated.  In this Court, he has slightly rephrased this claim to include a reference to the Due Process clause.  Again, any federal component of this claim was likely waived because it was not argued to the state court of appeals, but, perhaps because of the reference to the Due Process clause, respondent has argued the issue as if it presents a question of the sufficiency of the evidence to support the felony murder conviction.

The traverse is not particularly helpful in defining this claim further.  To some extent, petitioner appears to repeat his argument that unless the State proved a purposeful killing, he could not have properly been convicted of murder, but perhaps only manslaughter.  Again, however, the State was under no obligation to show purpose in order to obtain a felony murder conviction.  The Court sees no viable due process argument about the way in which Ohio has defined felony murder, including excluding both voluntary and involuntary manslaughter from serving as the underlying felonies to support a felony murder conviction - which is how the state court of appeals described the statutory scheme in question ("R.C. 2903.02 ... bars voluntary manslaughter (R.C. 2903.03) or involuntary manslaughter (R.C. 2903.04) from automatically becoming murder [even though] they are felonies of the first degree in which the victims died").  *State v. Arthurs, supra*, at *5.  Petitioner is not entitled to any relief from this Court on his fourth claim.

21

## C.  Ground Five - Failure to Declare a Mistrial

In his fifth ground for relief, petitioner asserts that his due process rights were violated when the state trial judge refused to declare a mistrial.  The event which led his counsel to ask for a mistrial was an isolated and unanticipated statement made by petitioner's son to the effect that when petitioner was arrested on these charges, a parole officer was present.  According to petitioner, even though the testimony did not specifically identify the parole officer in question as petitioner's parole officer, the jury could have so inferred.  Thus, he argues, this statement alerted the jury to the fact that he had some type of past criminal record, and the only reasonable solution to that problem would have been a mistrial.

The state court of appeals dealt with this claim in very summary fashion, noting that "[t]he trial judge discussed the problem presented by the mention of a parole officer, and decided that [petitioner] was not unfairly prejudiced. The decision was within the realm of the trial court's discretion."  *State v. Arthurs, supra*, at *6.  The state court decision did not cite to any state or federal decisions, but appears to have applied a legal standard that the refusal to declare a mistrial will not lead to reversal of a conviction unless the trial judge's ruling was an abuse of discretion.

Under the Due Process clause, if a federal appellate court were reviewing the decision of a lower federal court not to grant a mistrial, the standard of review would also be phrased in terms of an abuse of discretion.  *United States v. Chambers*, 944 F.2d 1253, 1263 (6th Cir. 2003).  However, "[w]hen conducting habeas review of a trial

decision of a state court not touching on a specific provision of the Bill of Rights, the standard of review is even higher: reversal is not warranted unless the comment 'was potentially so misleading and prejudicial that it deprived [the defendant] of a constitutionally fair trial.'" *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003), quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 641-42 (1974). In making such a determination, five factors have been identified as significant, including whether the remark which occasioned the motion for a mistrial was unsolicited, whether the line of questioning which led to the remark was reasonable, whether a prompt and clear limiting instruction was given, whether there was any evidence of governmental bad faith, and how the remark compared to the balance of the evidence at trial. *See id*.

Here, the state court record reflects that the response given by petitioner's son to the question of who arrested his father was unanticipated and that the line of questioning being pursued was reasonable. The trial judge did not give a limiting instruction, but petitioner's counsel did not object immediately to the statement and the judge was concerned that to bring the matter back to the jury's attention through a later instruction would be prejudicial. There is no evidence of bad faith on the part of the State, and the remark - which did not even affirmatively identify the parole officer who arrested petitioner as his parole officer, and which certainly did not inform the jury of any specific prior criminal record of petitioner's - could not have been prejudicial in light of the overwhelming evidence of petitioner's guilt. Therefore, keeping in mind how difficult it is to make out a Due Process violation on habeas review, petitioner is

23

not entitled to any relief on his fifth claim.

### D. Ground Six - Petitioner's Son as a Competent Witness

Next, petitioner argues that his son, who provided some corroborating testimony in this case but who was not actually present at the scene of the robbery and murder, was not competent to testify. He asserts that the trial judge's decision to allow the son to testify violated his rights under the Due Process clause. The state court of appeals held

> The son of Arthurs who testified was 16 years of age. He understood right from wrong and knew he would get in trouble if he lied under oath. His testimony at trial demonstrated his ability to receive impressions of fact and relate them. The trial court could reasonably find the young man to be competent to testify. The judge's finding of competency was not an abuse of discretion.

*State v. Arthurs, supra*, at *6. The factual findings made by the state court of appeals are binding on this Court. 28 U.S.C. §2254(e)(1); *Crosky v. Sheets*, 2011 WL 1812430, *23 (S.D. Ohio May 12, 2011) , *adopted and affirmed* 2011 WL 2884984 (S.D. Ohio July 18, 2011). Thus, the question before the Court is, assuming these facts about petitioner's son's ability to comprehend right and wrong and to relate things he had seen or heard are true, did the state court act unreasonably in finding that petitioner's due process rights were not violated?

In his traverse, petitioner argues that the fact that his son had reached some understanding with the juvenile authorities and that he may have been an accomplice to the crime should have impacted the decision to let him testify or should have prompted

a jury instruction about how to weigh his testimony.  But these arguments go to the credibility of the son's testimony, not his competence to have given it, and the latter issue is the only one presented to the state courts.  As to that issue, respondent cites to *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) for the proposition that unless a witness's testimony is so clearly unreliable as to undermine the Court's confidence in the reliability of the conviction, no due process violation can be established.  Although that decision does not appear to have been cited within the Sixth Circuit for that proposition, it falls well within the more general concept that errors in the admission of evidence under state law do not rise to the level of a federal constitutional violation "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

Here, there was nothing fundamentally unfair about the trial judge's decision to allow petitioner's son to testify.  The matters which were explored about his competency were appropriate, and, as noted, the state courts' findings on the underlying factual issues are presumed to be correct.  Given the fact that a witness should be declared incompetent only if that witness is "so impaired in some manner that [he] cannot give meaningful testimony," *see United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir. 1989), the state court did not unreasonably determine that petitioner's son did not meet that standard.  Under these circumstances, petitioner is not entitled to relief on his sixth claim.

### E.  Ground Eight - Effect of "Combined Errors"

Petitioner does not actually raise a separate constitutional claim in Ground Eight. Rather, he contends that even if none of the other trial errors he has identified would independently support relief, their cumulative effect deprived him of a fair trial.  The state appellate court, having found no merit to any of petitioner's other arguments, held that "[t]he assigned errors set forth above have been overruled and do not in anyway indicate a violation of due process of law."  *State v. Arthurs, supra*, at *7.  It went on to address a number of other claimed errors he identified in this category, all of which have to do with claimed violations of state law, and held that none of them supported reversal of the convictions.  Respondent correctly points out that such cumulative error claims cannot support the issuance of a writ of habeas corpus.  *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)("the law of this Circuit is that cumulative error claims are not cognizable on habeas [corpus]").  Consequently, the Court will address only one aspect of this claim, which is that the trial judge erroneously gave the jury an instruction about continuing deliberations after it became deadlocked (known in Ohio as a *Howard* instruction) before the need to give that instruction arose, even though petitioner does not refer to this specific claim in his traverse.

The state court of appeals, when addressing this issue, noted that the instruction was given on the third day of jury deliberations "after the jury asked if it needed to come to full agreement on all accounts to avoid a mistrial."  *State v. Arthurs, supra*, at *7. Petitioner's argument to that court was not that the language of the instruction was

26

problematic, but that he was prejudiced because the note did not really mean that the jury had reached an impasse, and that the trial judge acted prematurely by delivering the charge. The state court of appeals found no abuse of discretion, noting that the length of time the jury had spent deliberating made it reasonable for the trial judge to think that the instruction would be helpful.

In this Circuit, "the due process inquiry associated with [such a jury] charge focuses on the circumstances that triggered the charge, as well as the language of the charge itself." *Henderson v. Collins*, 262 F.3d 615, 619 (6th Cir. 2001). If properly given, most courts have found such an instruction not to be inherently coercive. *See United States v. Strothers*, 77 F.3d 1389, 1395 (D.C. Cir. 1996). Nevertheless, a reviewing court should make an inquiry into matters such as how long the jury deliberated before the charge was given, and if there are other reasons to believe that it was coercive. *See, e.g., Moore v. Adams,* 2008 WL 2441084 (E.D. Cal. June 13, 2008), *adopted and affirmed* 2008 WL 2915078 (E.D. Cal. July 25, 2008). The state court of appeals made the correct inquiry and reasonable jurists could have reached the same conclusion as that court, namely that it was within the trial judge's discretion to have given this instruction to the jury, and that the record does not contain any indication that the instruction or the circumstances surrounding it were unduly coercive. Thus, nothing in this ground for relief merits the granting of a writ.

**F. Ground Nine - Failure to Explain Mandatory Nature of Post-Release Control**

Petitioner's ninth assignment of error to the Tenth District Court of Appeals was

27

couched purely in terms of state law.  He claimed that the trial judge's failure to explain, at his sentencing, that he would be subject to post-release control should he ever be released from prison was a violation of Ohio Rev. Code §2967.28 and rendered the entire sentence void.  The state court of appeals analyzed the issue under Ohio law and found no error requiring reversal.  Here, petitioner appears to claim that the trial judge's failure to comply with Ohio law somehow violated his due process rights.

As with many of his other claims, petitioner's failure to present this issue as a federal constitutional issue in the state courts is potentially fatal to his ability to obtain habeas corpus relief.  To the extent that he continues to advance the claim as an error of state law, it is true, of course, that a federal court cannot grant habeas corpus relief on the basis of a perceived error of state law.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Even if he had argued this as a due process violation, it is hard to see how this particular omission affected the validity of the remainder of his sentence from a federal constitutional viewpoint.  Perhaps if he is ever placed on post-release control, and he raises a claim that it was not properly part of his sentence, he might have some due process claim (although the Court hastens to add that it is by no means certain that such a claim would exist or be meritorious), but the Court fails to see how this affected his current sentence of incarceration.  Because, in order to obtain habeas corpus relief in this Court, petitioner must show that he is currently being held in custody in violation of federal law, this claim does not provide any basis for relief.

### G.  Ground Ten - Ineffective Assistance of Counsel

In his final ground for relief, petitioner claims that he did not receive effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments, because his counsel failed to ask the trial judge for an "accomplice instruction" which must be given by Ohio trial judges upon request. Because of that failure, the instruction was not given, and petitioner claims that counsel's performance both fell below the standard required by the Constitution, and that he suffered prejudice from the absence of such an instruction. He also claimed, in his state court appeal, that trial counsel was ineffective for failing to ask for an instruction on the lesser-included offense of involuntary manslaughter. The state court of appeals found otherwise, holding that trial counsel's failure to ask for the accomplice instruction may have been improper but that "the failure to do so could not have conceivably affected the outcome of the trial." *State v. Arthurs, supra*, at *8. The state court of appeals also found no other deficiencies in counsel's performance, noting that he "litigated diligently" and was able to obtain an acquittal on the aggravated murder charge. *Id*. In making those findings, the state court relied on *Strickland v. Washington*, 466 U.S. 668 (1984), which is the controlling federal decision on the standard to apply to Sixth Amendment-based challenges to the effectiveness of counsel in a criminal case. Therefore, this Court's inquiry is limited to the question of whether the state court unreasonably applied *Strickland* to the facts of this case.

It is unclear if petitioner intended to raise one or both of these claims here, but, liberally construing his petition and the traverse, which makes brief mention of the

29

involuntary manslaughter charge in connection with the tenth ground for relief, the Court will assume that he has done so.  His traverse also appears to argue that counsel's failure to address the issue of post-release control at the time of sentencing was ineffective assistance, but that claim was not raised on appeal, and his contention that the sentence was improper was reviewed by the state court of appeals on its merits, so anything trial counsel may or may not have done in that regard is irrelevant to the question of whether counsel properly preserved the issue for review.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id* .

30

To establish the second prong of the *Strickland* test, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because petitioner must satisfy both prongs of the Strickland test to demonstrate ineffective assistance of counsel, should the court determine that petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697

Taking the two claimed instances of ineffective assistance of counsel in reverse order, as a general matter, "failure to request instructions on lesser included offenses is a matter of trial strategy and does not support a claim of ineffective assistance." *Brakeall v. Warden Ross Correctional Inst.*, 2011 WL 2374855, *14 (S.D. Ohio June 9, 2011), *adopted and affirmed* 2011 WL 4712774 (S.D. Ohio October 6, 2011). There is no evidence in this record from which it could be argued that the failure to request an involuntary manslaughter instruction was not a strategic decision.

Second, the Ohio courts have explained the difference between felony murder and involuntary manslaughter is in this way:

> A comparison of the felony murder statute, R.C. 2903.02(B), and the involuntary manslaughter statute, R.C. 2903.04(A), reveals that they do not prohibit identical activity and require identical proof. Causing another's death as a proximate result of committing any felony, which is sufficient to prove involuntary manslaughter, is not always or necessarily sufficient to prove felony murder. In order to prove felony murder the State is required to prove more: that the underlying felony is an offense of violence, defined in R.C. 2901.01(A)(9), that is a felony of the first or second degree, and not a violation of R.C. 2903.03 or 2903.04.

31

*State v. Dixon*, 2002 WL 191582, *3 (Montgomery Co. App. February 8, 2002).  In this case, petitioner was charged with and convicted of an underlying felony, aggravated robbery, which is a crime of violence and which is a first or second degree felony, so that all of the elements of felony murder were present.  Since the jury believed that he committed the underlying aggravated robbery, it is highly unlikely that had it been given the option of finding him guilty of only involuntary manslaughter as opposed to felony murder, it would have chosen that option.  Thus, regardless of whether counsel acted strategically or ineffectively in failing to ask for an involuntary manslaughter instruction, there is little likelihood that such a failure deprived petitioner of the right to a fair trial or affected the outcome of the case.

As to the accomplice instruction, the court of appeals seems to have assumed that there was no reasonable explanation for trial counsel's failure to request the instruction, but it found that even if the instruction had been given, it would not likely have affected the result of the trial.  In so holding, the court noted that " [t]he testimony of Gibson [the accomplice]  and Lowery was consistent as to the circumstances surrounding the robbery and murder. That testimony was supported by the testimony of Josh, who was in the residence at the time of the robbery and homicide. Further, [petitioner] confessed the shooting to his son, who also was called as a witness for the State of Ohio." *State v. Arthurs, supra*, at *5.  The trial court did instruct the jury generally as to the credibility of the witnesses, telling the jurors that interest and bias

32

were factors which could lead them to disbelieve a witness' testimony. *Trial Transcript*, at 597. The jurors also learned that Mr. Gibson had made an agreement to testify against petitioner in exchange for a more lenient sentence, and petitioner's counsel argued that point in his closing statement.

In some instances, particularly where an accomplice's testimony is uncorroborated, the failure to give this type of instruction requires reversal. *See, e.g., United States v. Gardner*, 244 F.3 784 (10th Cir. 2001). Generally, however, the failure to give a specific instruction on accomplice testimony is held not to be reversible error so long as the jury was adequately informed of the general reasons why it might decide not to credit a particular witness' testimony. *See, e.g., United States v. Carr*, 5 F.3d 986, 992 (6th Cir. 1993)("[t]he court's instruction adequately informed the jury regarding the credibility of witness testimony, and so we are not troubled simply because the court chose not to explicitly highlight the credibility problems inhering in accomplice testimony"). Other courts have noted that if "the jury had sufficient evidence to assess [the accomplices'] credibility and their possible motives for lying," the failure to give this type of instruction does not deprive the defendant of a fair trial. *See Young v. Trombley*, 2009 WL 909563, *6 (E.D. Mich. March 31, 2009), *aff'd* 435 Fed. Appx. 499 (6th Cir. Aug. 16, 2011).

Given this state of the law, and given the factors present in this case - the existence of substantial corroborating evidence, the jury's knowledge of the plea agreement given to Mr. Gibson, the general instruction on credibility, and counsel's

33

ability to argue this point to the jury - the state court did not unreasonably conclude that the failure to give an accomplice instruction had no material impact on the jury's decision.  Because that is so, the state court of appeals did not unreasonably apply the *Strickland* test to petitioner's claim of ineffective assistance of trial counsel, and this Court may not disturb its ruling on this point.  This ruling is also dispositive of petitioner's contention that ineffective assistance of counsel can serve as a basis for excusing the procedural default of his second ground for relief.  Consequently, as did the state court of appeals, this Court determines that none of petitioner's claims have merit, and that he is not entitled to any relief.

## V.  RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **DISMISSED**.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this

34

matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge

35